John A. MASON, III, et al., Plaintiffs,

v.

CONTINENTAL GROUP, INC., et al., Defendants.

Civ. A. No. CV80–L–1730–S.

United States District Court,
N.D. Alabama, S.D.

July 27, 1983.

Jerry O. Lorant, J. Gusty Yearout, Lorant, Harris & Yearout, P.C., Birmingham, Ala., for plaintiffs.

William F. Gardner, Sydney F. Frazier, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

LYNNE, Senior District Judge.

This action has been submitted to the Court on the defendants' motions for summary judgment. Defendants are the United Steelworkers of America, AFL–CIO (hereinafter "the Union"), and The Continental Group, Inc., together with its operating division, Continental Can Company, U.S.A. (hereinafter collectively referred to

as "Continental"). Plaintiffs are individuals who were employed by Continental at its Plant No. 411 in Fairfield, Alabama, until the plant was closed on December 21, 1979. At all times relevant to the allegations of the complaint, plaintiffs were members of the collective bargaining unit represented by the Union and were subject to a written collective bargaining agreement, insurance agreement and pension plan entered into between Continental and the Union.

This action was originally filed in state court, Continental being the only defendant specifically identified in the complaint, and was removed by Continental to this court. Jurisdiction is predicated upon the provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). After Continental moved for summary judgment on the ground that plaintiffs have made no attempt to resolve their claims through the grievance and arbitration provisions contained in the collective bargaining agreement, insurance agreement and pension plan, the plaintiffs amended their complaint with leave of court to add the Union as a defendant and to assert claims against the Union, including a claim for breach of the duty of fair representation, principally based upon the Union's failure to prosecute plaintiffs' complaints through the grievance and arbitration procedure.

In their original complaint against Continental, plaintiffs claimed damages "for their wrongful termination, for the deprivation of employee benefits, pension retirement benefits, comprehensive employee benefits, seniority rights, [and] mental anguish" resulting from the closing of Plant No. 411. They allege:

> [Continental] as employer of plaintiffs, continuously throughout said employment and prior thereto, represented to and agreed with plaintiffs, that plaintiffs would have continuous employment with [Continental] until plaintiffs reached the age of 65 or until plaintiffs became otherwise eligible to receive full retirement and other benefits under a comprehensive benefit program as long as plaintiffs performed their respective jobs in a satisfactory manner. [Continental] further represented and promised additional employee benefits including, but not limited to, extended vacation after employment with [Continental] for ten years.

Plaintiffs contend that Continental breached its agreement by terminating their employment, that the termination gives rise to a cause of action under the Alabama fraud statutes, *see Ala.Code* §§ 6–5–101 to 104 (1975), and that Continental conspired with others to defraud plaintiffs. Plaintiffs also contend that Continental violated the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.,* by terminating plaintiffs' employment out of a desire to interfere with plaintiffs' attainment of rights and benefits under a comprehensive benefit program administered by Continental.

In their amendment to the complaint adding the Union as a defendant, plaintiffs contend that the Union breached its duty of fair representation by (a) failing to provide a reasonable grievance and arbitration procedure for plaintiffs upon the termination of their employment; (b) failing to prepare and prosecute grievances; (c) failing and refusing to make available to plaintiffs administrative remedies provided under the collective bargaining agreement; (d) conspiring with Continental for the plant's shutdown; and (e) conspiring with Continental to terminate plaintiffs' employment without first submitting the proposed plant shutdown through the contractual grievance procedure. Aside from their claim for breach of the duty of fair representation, plaintiffs contend that the Union and Continental conspired to deprive them of their rights provided for in the collective bargaining agreement and other rights by planning to shut down the plant without providing a grievance and arbitration procedure before and after the termination of plaintiffs' employment.

## I. Continental's Motion for Summary Judgment (Herein of Grieving the Death of a Plant)

Continental moves for summary judgment on the basis of plaintiffs' failure to

attempt to resolve their claims through the grievance and arbitration provisions of the collective bargaining agreement. It is undisputed that no plaintiff initiated a grievance relating to the company's actions in closing Plant No. 411. Equally undisputed is the principle of law set forth in *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965):

> As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf.

379 U.S. at 652–53, 85 S.Ct. at 616 (footnotes and citations omitted). In response, plaintiffs argue that the claims they assert in this action are not within the scope of the grievance and arbitration procedure and that, in any event, under the circumstances they were excused from the requirement that they first resort to that procedure.

The provisions for the settlement of disputes in the contract establish a four-step grievance procedure culminating in arbitration and preceded by the following relevant language:

> 13.1 Purpose.
> The purpose of this Article is to provide an opportunity for discussion of any request or complaint and to establish a procedure for the processing and settling of grievances, as defined in Section 13.2.
> 13.2 Definition
> A grievance is defined as any difference between the Local Management and the Union or employees as to the interpretation or application of or compliance with this Agreement respecting wages, hours, or conditions of employment. Any dispute over whether a complaint is subject to these procedures shall be handled as a grievance in accordance with the procedures prescribed herein.

Also relevant is the description of the first step in the grievance procedure:

> Within thirty (30) calendar days after wrong complained of was supposed to have happened or started to exist (but if the employee did not find out about the wrong immediately, he will be allowed thirty (30) calendar days after he reasonably should have found out about it to file the grievance) the employee, with a Grievance Committeeman or Steward, or if he so desires, alone, talks over the grievance with his Supervisor in a sincere effort to settle the problem. *This does not preclude the handling of group grievances.* (Emphasis added).

■ There can be little doubt that the grievance and arbitration provisions of the contract in question are sufficiently broad to encompass plaintiffs' claims that they have been wrongfully denied benefits provided by the contract. Plaintiffs' contention that, because they base their claim not on a breach of the collective bargaining agreement but rather on fraudulent misrepresentations and the breach of obligations created by those representations, their claims were not grievable was rejected by this Court in the closely analogous case of *Reese v. Mead Corporation*, 79 Lab.Cas. (CCH), 11,732 (N.D.Ala.1975), *aff'd mem.*, 79 Lab.Cas. (CCH), 11,733 (5th Cir.1976). There the plaintiffs, who had elected under a collective bargaining agreement to receive a severance allowance upon the closing of one of defendant's furnaces at which they worked rather than electing to remain in layoff status, claimed that the defendant deprived them of seniority and pension rights by misrepresenting certain facts on the basis of which plaintiffs made the decision to elect the severance option. In response to the plaintiffs' argument that their claims based upon fraud could be maintained independently of the collective bargaining agreement, the Court stated:

> In the present case former employees are complaining that statements made by their employer in and about the applica-

tion of the collective bargaining agreement resulted in a denial of certain benefits that plaintiffs would not have had but for that agreement. The Court concludes that notwithstanding the "fraud" label applied by plaintiffs, the seniority and pension benefit claims are sufficiently bound up in the collective bargaining agreement between [defendant] and the Union to require the application of federal labor law principles recognized in *Republic Steel, supra.*

As in *Reese,* plaintiffs' attempt in the present case to separate their claims from the collective bargaining agreement is without merit.

■ This Court in *Reese* also addressed the principles for determining the breadth of a grievance and arbitration procedure:

> Having concluded that federal labor policies control this dispute, the Court cannot then escape the strict standards for interpreting the scope of collectively bargained arbitration clauses set out in *United Steel Workers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960): there must be either an "express provision excluding a particular grievance from arbitration" or "the most forceful evidence of a purpose to exclude the claim from arbitration." 363 U.S. at 585, 80 S.Ct. at 1354.

This Court went on to note the rule established by the Supreme Court for doubtful cases:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*

*Warrior & Gulf Navigation Co.,* 363 U.S. at 582–583, 80 S.Ct. at 1353 (footnotes omitted) (emphasis added). As in *Reese,* where this Court concluded the grievance procedure was applicable, the grievance procedure in the present case applies to "the interpretation or application of or compliance with" the terms of the agreement.

The contract in this case also goes further to define a grievance to include any dispute as to whether a complaint is subject to the grievance procedure. In addition, both the insurance agreement and pension plan contain appeal procedures which state that any differences that may arise under those plans "may be taken up as a grievance in accordance with the applicable provisions of the Master Agreement . . . ." Under these provisions and the principles discussed in *Reese,* it was incumbent upon plaintiffs to attempt, unless otherwise excused, to present their complaints concerning "fraud" and breach of some "contract" other than the collective bargaining agreement through the grievance mechanism as required in *Republic Steel.* That exhaustion of remedies requirement is likewise applicable to plaintiffs' claims based upon ERISA. *Amato v. Bernard,* 618 F.2d 559 (9th Cir. 1980).

■ Plaintiffs' attempt to escape the "strict standards" applicable to such provisions by arguing that the grievance procedure was designed to handle individual disputes with local management and not disputes concerning a corporate decision to close a plant. *See Schneider v. Electric Auto-Lite Co.,* 456 F.2d 366 (6th Cir.1972) (grievance procedure applicable to disputes "between the foreman and any employee" held inapplicable to disputes arising out of the permanent shutdown of the employer's plant). Given the broad sweep of the provisions at issue in this case, which are much broader than the language at issue in the decision in *Schneider* upon which plaintiffs rely, the argument is unconvincing. Particularly noteworthy in this connection is the following statement contained in Step 1 of the grievance procedure: "This does not preclude the handling of group grievances." Furthermore, the argument appears to be foreclosed by the decision in *Republic Steel,* where the Supreme Court found a grievance procedure applicable to an employee's claim for severance pay arising out of a decision to close a mine.

■ Given that plaintiffs' complaints are within the scope of the grievance and arbi-

tration provisions, they must establish some excuse for failing to attempt to invoke the procedure established in those provisions in order to avoid summary judgment in favor of Continental. It is now well settled, of course, that if an employee can establish his union breached its duty of fair representation in the handling of a grievance, the Union's breach of duty "relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures." *Hines v. Anchor Motor Freight,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976); *see Vaca v. Sipes,* 386 U.S. 171, 185–186, 87 S.Ct. 903, 914–915, 17 L.Ed.2d 842 (1967). Thus, if plaintiffs can avoid summary judgment in favor of the Union on their breach of the duty of fair representation claim, a matter discussed in Part II below, Continental's motion must likewise be denied. In addition to the Union's alleged breach of duty, plaintiffs contend they were excused from resorting to the contractual mechanisms because: (1) any attempt to pursue a grievance would have been futile since "there was no grievance and arbitration procedure remaining subsequent to the termination of plaintiffs' employment," amendment to complaint, Paragraph 39; (2) Continental had repudiated the grievance and arbitration procedure; (3) the claim that the company and the Union conspired to deprive plaintiffs of certain rights could not be adequately resolved through the grievance procedure since the Union would have to prove its own wrongful conduct; and (4) the plaintiffs' claims for punitive damages could not be resolved through the grievance and arbitration procedure since an arbitrator would have no authority to award such damages.

In response to plaintiffs' argument that pursuing grievances would have been futile, Continental asserts that the principle established by the Supreme Court in *Maddox* "completely forecloses" this line of attack:

> Finally, Maddox suggests that it was not possible for him to make use of the grievance procedure, the first step of which called for a discussion within 30 days of his discharge with his foreman, because a mine that has permanently closed has no foreman—indeed, no employees of any kind. This casuistic reading of the contract cannot be accepted. The foreman did not vanish; and it is unlikely that the union grievance procedure broke down within 30 days of Maddox' discharge. In any event, the case is before us on stipulated facts; in neither the facts nor the pleadings is there any suggestion that Maddox could not have availed himself of the grievance procedure instead of waiting nearly three years and bringing a court suit.

*Republic Steel Corp. v. Maddox,* 379 U.S. at 659, 85 S.Ct. at 619–20. While the Court is unwilling to hold categorically that the above quotation from *Maddox* "completely forecloses" plaintiffs' argument, the undisputed facts establish its fatal flaw.

■ In support of plaintiffs' assertion that pursuit of grievances would have been futile based on the absence of any grievance or arbitration procedure after the plant had closed, several plaintiffs have submitted identical affidavits stating that "we were also advised at the closing of the plant that we should not return to the premises which made it impossible to process any grievance and arbitration procedures should they have been available." However, the undisputed evidence is that the announcement of the plant closing was first made in September of 1979, over two months before the event actually occurred (Gurley Affidavit, ¶ 3). On October 11, 1979, the Union held a meeting with all the employees to discuss the closing yet no claim was raised by any plaintiff or other employee concerning a company promise of continued employment and benefits (Newell Deposition, pp. 13–15, 17–18). Thereafter, a company and union representative met with each individual employee to review the plant closing provisions of the union contract and to discuss the benefits and options available to each employee who was being laid off (Middleton Deposition, pp. 30–31). Layoffs of employees occurred over a two month period in October and November,

and on December 21, 1979, the plant ceased operations (Gurley Affidavit, p. 5).

Under the foregoing circumstances it appears that the plaintiffs had full opportunity to raise claims concerning the closing of the plant with company and union representatives with whom they were meeting on that very subject. Had the plaintiffs in fact continuously received promises of lifetime employment and benefits as alleged in the complaint, it seems clear that questions or complaints could have been raised during the two month period following the company's announcement of the breach of these promises. Moreover, according to Continental's Human Resources Manager, Joe Middleton, employees from the plant have in fact filed grievances concerning employee benefits long after the plant closed, those grievances being handled through the staff representative of the Union (Middleton Deposition, pp. 43–46). Therefore, even when the Court fully credits the plaintiffs' statements to the effect that they were told not to return to the plant after it had closed, such evidence does not create a genuine issue of material fact as to whether there was an available and continuing avenue for the filing of grievances directed to any aspect of the plant closure. *See Republic Steel Corp. v. Maddox, supra.*

■ The second and third excuses plaintiffs set forth—Continental's repudiation of the grievance mechanism and its conspiracy with the Union—appear to lack a factual basis. The Supreme Court noted in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), that an employee need not pursue the remedial procedures established by contract "when the conduct of the employer amounts to a repudiation of those contractual procedures." *Id.* at 185, 87 S.Ct. at 914. The Court did not elaborate upon what amounts to repudiation but the concept is inapplicable to the present case. Plaintiffs also cite two decisions suggesting that where employees complain of a conspiracy between their employer and their union, their complaints need not be submitted as a grievance. *Lusk v. Eastern Products Corp.,* 427 F.2d 705, 708 (4th Cir.

1970); *see Battle v. Clark Equipment Co.,* 579 F.2d 1338, 1345 (7th Cir.1978). Plaintiffs have pointed to no evidence in the depositions on file in support of their conspiracy charge. A careful examination of such depositions has revealed none. The Union has submitted affidavits from two of its officials who were responsible for representing plaintiffs, however, which assert that they have not had any discussion or understanding with Continental or its representatives concerning the rights of the plaintiffs or any other bargaining unit employees to use the grievance procedure, other than discussions in which Continental informed them it was availing itself of the right to close the plant pursuant to the collective bargaining agreement. (Affidavit of Ralph Gurley, ¶ 8; affidavit of David Newell, ¶ 5). The conspiracy charge has no basis in the facts.

■ The fourth excuse proffered by plaintiffs—that they could not obtain the relief they sought, namely, punitive damages, through the grievance procedure—is nothing more than a make weight argument.

### II. *The Union's Motion for Summary Judgment*

■ The Union has moved for summary judgment with respect to the claims asserted against it on the grounds that (1) plaintiffs' claims are barred by the applicable statute of limitations, and (2) plaintiffs' claims are unsupportable in light of the undisputed facts. Plaintiffs' claim against the Union for breach of its duty of fair representation is based principally upon their assertions that they were advised at the time of the plant closing by Union officials that the shutdown was not an arbitrable matter subject to the grievance and arbitration procedure. (Plaintiffs' affidavits in opposition to defendants' motions for summary judgment). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct.

903, 916, 17 L.Ed.2d 842 (1967). Assuming that the Union conduct of which plaintiffs complain amounted to such a breach, it seems clear that the cause of action arose at or near the time of the closing of the plant on December 21, 1979. Applying the six-month limitations period prescribed by § 10(b) of the National Labor Relations Act, 29 U.S.C. § 106(b), to plaintiffs' claims, *DelCostello v. International Brotherhood of Teamsters, et al.,* No. 81–2386 (decided June 8, 1983), plaintiffs' claim would be barred since the Union was not added as a defendant until December 7, 1981, when the Court allowed plaintiffs to so amend their complaint. Plaintiffs, however, argue that the limitations period did not begin to run until they knew or should have known that the Union's alleged statements concerning the grievability of the shutdown were false. According to plaintiffs, they did not discover until August 3, 1981, that their complaint was allegedly subject to the grievance procedures. That assertion is patently erroneous. On December 29, 1980, Continental filed its answer to the complaint along with its petition for removal, both of which asserted that plaintiffs' claims were subject to the grievance and arbitration procedure. Furthermore, the identical affidavits submitted by several plaintiffs, assert: "I do not feel my claim is subject to the grievance and arbitration procedure of the collective bargaining agreement. I did not discover that this might conceivably be subject to the grievance and arbitration procedure until the company filed its answer to our complaint in which they set out as a defense that we had not complied with the grievance and arbitration procedure." Since the Union was not added as a·defendant until more than six months following December 29, 1980, which is the latest date on which the six-month limitations period began to run, their claim against the Union for breach of its duty of fair representation is barred.

 Once it is concluded that the employee can maintain no action against the Union for breach of its duty because of the bar of the statute of limitations, such a breach no longer furnishes an excuse for failure to resort to the grievance mechanisms before pursuing a claim against the employer. "When the six-month period of § 10(b) has passed, the employee should no longer be able to challenge the alleged breach of duty by his Union, and as this is a precondition for maintaining the contract action, he should not be able to challenge the employer's action either." *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 69, 101 S.Ct. 1559, 1567, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in the judgment) (footnotes omitted). Since the Union is entitled to summary judgment with respect to the claimed breach of duty of fair representation on the basis of the statute of limitations, the company is also entitled to summary judgment since plaintiffs' failure to resort to the grievance mechanism was not excused as appears hereinabove.

Both motions for summary judgment will be granted by separate order.