**John MASON, III, et al.,**
**Plaintiffs-Appellants,**

**v.**

**CONTINENTAL GROUP, INC., et al.,**
**Defendants-Appellees.**

**No. 83–7479.**

United States Court of Appeals,
Eleventh Circuit.

June 21, 1985.

J. Gusty Yearout, Birmingham, Ala., for plaintiffs-appellants.

Robert H. Stroop, Jr., Jerome A. Cooper, Birmingham, Ala., for United Steelworkers of America, AFL–CIO.

Sydney F. Frazier, Jr., Birmingham, Ala., for Continental Group.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

Plaintiffs, former employees of Continental Can Company, claim the company closed its Alabama plant in order to avoid employment obligations to its employees, after having induced plaintiffs to continue as employees on the representation that the plant would remain in operation. They brought a suit against the company alleging breach of contract, intentional and willful fraud, and breach of state law fiduciary requirements, and against the union alleging a breach of the duty of representation and conspiracy to defraud. Plaintiffs also assert a violation of their statutory rights under the Employee Retirement Income Security Act of 1974 ("ERISA").

The district court, 569 F.Supp. 1241 (D.C. Ala.1983) granted summary judgment for both the employer and the union, holding that plaintiffs' remedy lay in the grievance and arbitration procedures of the collective bargaining agreement, and that failure to exhaust those remedies foreclosed this litigation. We affirm.

The appeal raises issues as to (1) whether the company's alleged conduct is subject to the collective bargaining agreement, (2) if so, whether plaintiffs should be excused from exhausting remedies provided in that agreement; (3) whether the state law cause of action for breach of fiduciary duty is preempted by the National Labor Relations Act; (4) whether ERISA claims are subject to pension plan appeals procedures; and (5) whether Continental Can was a fiduciary under ERISA and subject to the duties imposed by the Act.

The decision of the first two issues turns on the collective bargaining agreement in force at the time. Since we hold that the claims should have been submitted to arbitration, we need not decide the third point, whether the state law breach of duty claim is preempted by the Labor Relations Act. The fourth and fifth points require an analysis of ERISA, but there too, we decide that exhaustion of administrative remedies must precede a court suit.

Plaintiffs, thirty-six employees at Continental Can's Plant No. 411 in Fairfield, Alabama, until the plant was closed on December 21, 1979, were at all times relevant to this case members of the collective bargaining unit represented by the United Steel Workers of America, AFL–CIO, subject to the collective bargaining agreement, insurance agreement, and pension plan entered into between Continental Can and the union. Because of changes in can manufacturing technology, in 1975 Continental Can began planning for gradual transition that would eventually result in the closing of Plant No. 411 in 1979 and the concurrent opening of a new plant in Atlanta, Georgia. Continental Can first announced the closing of Plant No. 411 to the employees in September 1979, two months before the event actually occurred. Layoffs of employees continued over the next two months, and the plant ceased operations on December 21, 1979.

Plaintiffs originally filed this action against Continental Can in state court on November 16, 1980. They claimed damages "for wrongful termination, for the deprivation of employee benefits, pension retirement benefits, comprehensive employee benefits, seniority rights, [and] mental anguish" resulting from the closing of Plant No. 411. They alleged that Continental Can, prior to the closing announcement, had made various fraudulent misrepresentations that they would have continuous employment with Continental Can until they reached retirement age as long as they performed their jobs satisfactorily. They contended that these and other misrepresentations induced them to continue their employment at the plant even though they would have obtained other jobs had they known Continental Can's intentions of closing down the plant and terminating their employment.

Predicating federal jurisdiction on section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, Continental Can removed the case to federal district court and moved for summary judgment on the grounds that plaintiffs' grievances were arbitrable under the collective bargaining agreement and that they had made no effort to resolve their claims through

the grievance and arbitration procedures provided in that agreement. Plaintiffs subsequently amended their complaint twice. First, plaintiffs added the ERISA claims against Continental Can, alleging that Continental Can had terminated their employment out of a desire to interfere with plaintiffs' attainment of rights and benefits under the comprehensive benefit program administered by Continental Can. Second, plaintiffs added the union as a party defendant, alleging that the union had breached its duty of fair representation owed to the plaintiffs by failing to file and prosecute plaintiffs' claims through the grievance and arbitration procedures, and that the union had conspired with Continental Can to deprive the plaintiffs of their rights under the collective bargaining agreement. The union also moved for summary judgment.

On July 27, 1983, the district court granted both defendants' motions for summary judgment. As to the union, the court held that plaintiffs' claims were barred by the applicable six-month statute of limitations. Plaintiffs do not appeal that decision.

As to the Company, the district court held that notwithstanding the state law fraud claims, the plaintiffs' complaints fell within the scope of the grievance and arbitration provisions. The court determined that it was "incumbent upon plaintiffs to attempt, unless otherwise excused, to present their complaints concerning 'fraud' and breach of some 'contract' other than the collective bargaining agreement through the grievance mechanism...." The court considered and rejected plaintiffs' arguments that they were excused from resorting to those procedures because it would have been futile. The court went on to find that an exhaustion of remedies requirement barred plaintiffs' ERISA claims because they had not invoked the arbitration procedures provided by the pension plan agreement.

### Exhaustion of Remedies Under Collective Bargaining Agreement

■ Employees claiming breach of a collective bargaining agreement or wrongful termination of employment by their employer are bound by that agreement's terms providing a method for resolving disputes between them and their employer. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 184–85, 87 S.Ct. 903, 913–14, 17 L.Ed.2d 842 (1967). When employees asserting an arbitrable grievance have not attempted to utilize the dispute resolution machinery available to them under the agreement, their independent suit against the employer must be dismissed. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965).

■ It is undisputed that the plaintiffs have never initiated a grievance against Continental Can concerning the closing of Plant No. 411 or any misrepresentations made prior to the announcement of the closing. Plaintiffs contend, however, that their state law fraud claims under the Alabama fraud statute are separate and independent from the collective bargaining agreement. Ala.Code §§ 6–5–101 to –104 (1977).

In *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Supreme Court provided guidance for determining when disputes are arbitrable under a collective bargaining agreement. The question is whether the reluctant party did agree to arbitrate the grievance. The Court directed that the arbitration provisions of an agreement should be broadly construed to encompass all claims that the employees have been terminated wrongfully and deprived of benefits guaranteed by the agreement unless the subject of the dispute is clearly excluded from the grievance procedure. *Id.* at 582–83, 80 S.Ct. at 1352–53. Questions of arbitrability are left to the arbitrator if there is a clear demonstration that the parties so intended. *Id.* at 583 n. 7, 80 S.Ct. at 1353 n. 7.

The grievance and arbitration provisions in the collective bargaining agreement be-

tween Continental Can and the union were quite broad:

13.1 Purpose

The purpose of this Article is to provide an opportunity for discussion of any request or complaint and to establish a procedure for the processing and settling of grievances, as defined in Section 13.2.

13.2 Definition

A grievance is defined as any difference between the Local Management and the Union or employees as to the interpretation or application of or compliance with the Agreement respecting wages, hours, or conditions of employment. Any dispute over whether the complaint is subject to these procedures shall be handled as a grievance in accordance with the procedures prescribed herein.

Section 13.2 clearly supports the district court's decision that plaintiffs were required to submit to arbitration the question of whether the definition of "grievance" included a complaint concerning alleged misrepresentations made by Continental Can with regard to the closing of Plant No. 411. Having agreed to such a broad arbitration clause, plaintiffs are bound to submit arguably extrinsic claims, such as fraud, to the grievance and arbitration process. *Cf. International Union of Operating Engineers, Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 491–92, 92 S.Ct. 1710, 1712–13, 32 L.Ed.2d 248 (1972) (laches defense submitted to arbitral process where agreement to arbitrate extends to "any difference").

In holding that plaintiffs could not separate their fraud claims from the collective bargaining agreement, the district court relied heavily on its prior decision in *Reese v. Mead Corp.,* 79 Lab.Cas. (CCH) ¶ 11,732 (N.D.Ala.1975), *aff'd mem.,* 529 F.2d 1350 (5th Cir.1976). In *Reese,* plaintiff employees claimed their employer had deprived them of seniority and pension rights by misrepresentations on which plaintiffs had decided whether to elect certain options under the collective bargaining agreement or to remain on layoff. Plaintiffs claimed that their reliance on these misrepresenta-

tions regarding their future employment gave rise to a cause of action based on the Alabama fraud statutes. As in the current case, none of the plaintiffs had attempted to institute the grievance procedures under the governing collective bargaining agreement. The court granted summary judgment for the employer, stating that given federal labor policies and the broad arbitration clause in the agreement, "it would seem entirely inappropriate to conclude that employees could cast aside the contract grievance procedure by merely alleging that statements made by the employer amounted to fraud." 79 Lab.Cas. (CCH) ¶ 11,732, at 22,005.

Plaintiffs argue that the fraud claims in *Reese* were different because the seniority and pension rights of which the workers were allegedly deprived were "predicated on the collective bargaining agreement." Plaintiffs contend they are not seeking enforcement of a collective bargaining agreement, but asking for relief for the loss of the right "to seek gainful and secure employment and build four years seniority elsewhere rather than continue their work at defendant's plant." The misrepresentations in *Reese,* however, allegedly affected the employees' election to accept a severance allowance coupled with termination of employment rights under the contract rather than to continue their layoff status in hopes of further employment with their employer at other locations. Had the *Reese* plaintiffs taken the layoff option, they could have continued to build seniority at a new location, much like the plaintiffs in the current case claim they would have done at a new place of employment.

In *Redmond v. Dresser Industries, Inc.,* 734 F.2d 633 (11th Cir.1984), this Court determined that an employee's breach of contract, fraud, outrage, and bad faith claims all derived from his layoff by his employer and concerned rights arising under the collective bargaining agreement. There plaintiff attempted to claim both a separate individual employment agreement created by certain alleged representations made by his superiors which later turned

out to be untrue and an employment agreement under the collective bargaining agreement. The plaintiff was held to be barred from bringing suit because of his failure to attempt to follow the grievance procedures set out in the collective bargaining agreement. *Id.* at 634–35. *See also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir.1980) (rejecting plaintiff's contention that complaint alleged only common law causes of action and construing complaint as alleging breach of a collective bargaining agreement); *Schwartz v. R.C. Motor Lines, Inc.*, 434 F.Supp. 785, 787 (E.D.Va.1977) (applying exhaustion requirement over plaintiff's objections that complaint alleged fraud and deception on the part of the employer).

Plaintiffs argue that since a decision to shut down a plant for economic reasons does not fall within an arbitration clause covering "wages, hours, and conditions of employment" under *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981), and *Weather Tamer, Inc. v. NLRB*, 676 F.2d 483 (11th Cir.1982), a cause of action for fraudulent concealment and misrepresentation of that decision would not be covered. We disagree. First, those decisions involve questions of statutory interpretation, not contract interpretation. *First National Maintenance* holds that the employer's decision to close down a plant is not one of the "terms and conditions of employment" under section 8(d) of the National Labor Relations Act ("NLRA") which are mandatory subjects of bargaining under NLRA § 8(a)(5). *Weather Tamer* merely holds that the employer was not guilty of closing down the plant for the purpose of discouraging union activity, citing *First National Maintenance* for the proposition that the employer can indeed shut down the plant for economic reasons without consulting the union. 676 F.2d at 493.

Second, the plaintiffs do not base their cause of action on the decision to close the plant, but on management relations to plaintiffs which are conceptually separate from the closing of the plant.

Plaintiffs argue that even if the contract grievance provisions are found to cover the issues they raise, they were excused from pursuing their claims under the collective bargaining agreement because to do so would have been "wholly futile." Plaintiffs contend that they were advised by union officials that the plant closing was not arbitrable and therefore to require plaintiffs to exhaust their contract remedies would have been "futile." The test for "futility" is not, however, whether the employees' claims would succeed, but whether the employees could have availed themselves of the grievance procedure. *Republic Steel Corp. v. Maddox*, 379 U.S. at 659, 85 S.Ct. at 619. The district court noted that the employees had two months between the closing announcement and the plant shutdown during which they had "full opportunity to raise claims concerning the closing of the plant" or the alleged misrepresentations.

This case is a bit different from any cited. The argument is that having induced the plaintiffs to continue their employment at the Alabama plant on false representations that the plant would remain open, the employer is liable to its employees when the plant is closed, and that this claim is not encompassed in the collective bargaining agreement. On analysis, however, the claim is for termination of employment, wrongful because the employer had represented the employment would continue. Wrongful termination of employment is grist for the arbitration mill in collective bargaining agreements. Simply characterizing the claim as a tort claim rather than a breach of contract claim is insufficient to take it out of the policy that such disputes are subject to arbitration. Plaintiffs have shown no reason to excuse the failure to pursue the remedies available to them under the collective bargaining agreement.

### Exhaustion of Remedies Under Pension Plan Agreement

Around 1976 Continental Can developed and began using a computerized data base

known as Bell I, which listed certain basic information on all its employees. Continental Can used Bell I in conjunction with a computer program known as Bell II to enable it to measure the current and long term employee costs of its operations. The resulting information was used for both current and future planning purposes. The existence and use of Bell I and Bell II were kept confidential.

Plaintiffs contend that Continental Can's use of Bell I and Bell II constituted violations of various ERISA provisions. They allege that the programs enabled the company to compare its Plant No. 411 employee costs attributable to the seniority and pension systems then in effect with the costs associated with the proposed Atlanta plant using workers with less seniority. Plaintiffs argue that the confidential use of those programs by Continental Can violated Continental Can's fiduciary duties to its employees under 29 U.S.C.A. §§ 1104 and 1106, that the failure to disclose the plans violated the reporting and disclosure requirements imposed by 29 U.S.C.A. §§ 1022 and 1024, and that plaintiffs' termination by Continental Can constituted unlawful interference with protected employee rights under 29 U.S.C.A. § 1140.

Continental Can responds that plaintiffs failed to raise the fiduciary duty claims in the district court and that these claims are therefore foreclosed. Because plaintiffs' complaint only stated a cause of action for wrongful termination, Continental Can contends that the fiduciary duty claims cannot be raised on appeal. Plaintiffs first raised their ERISA claims in an amendment to their complaint on May 8, 1981. The amended complaint charged that Continental Can, as plaintiffs' "employer" under 29 U.S.C.A. § 1002(5), had "violated the provisions of 29 U.S.C.A. § 1001, *et seq.* by unlawfully terminating plaintiffs' employment" and that Continental Can had "terminated plaintiffs because of [its] desire to interfere with the attainment of rights [and] benefits of plaintiffs under the plan." Plaintiffs now contend that these general allegations coupled with the original complaint's specific averment of a fiduciary

relationship between Continental Can and its employees were sufficient to preserve the fiduciary duty claims for appeal. Continental Can does concede that plaintiffs' amended complaint stated a cause of action for wrongful termination under 29 U.S.C.A. § 1140 and that plaintiff had argued that theory in district court. For purposes of addressing the exhaustion argument, we assume without deciding that plaintiffs' fiduciary duty claims were sufficiently presented to the trial court.

■ The district court concluded that plaintiffs' ERISA claims were barred due to their failure to exhaust their remedies under the pension plan agreement. Plaintiffs contend that an exhaustion requirement should only be applied to applications for or denials of benefits under the plan and not to claims involving violations of ERISA's statutory provisions, such as 29 U.S.C.A. § 1140, which provides:

> It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled to under the plan....

Plaintiffs' allegations state a claim under this section which may be enforced through a civil action under section 502 of ERISA:

> (a) A civil action may be brought—
>
> . . . .
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
>
> . . . .

29 U.S.C.A. § 1132(a)(3). This section, however, is silent with regard to whether exhaustion is to be required before these claims are brought in federal court.

ERISA requires that every employee benefit plan "afford a reasonable opportunity to any participant whose claim for

benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C.A. § 1133(2). In accordance with that section, the pension plan before us contains an appeals procedure:

Any difference that may arise between you and the Company concerning your application for, entitlement to or the amount of payment of a lump sum retirement allowance, pension or deferred benefit may be taken up as a grievance in accordance with the applicable provisions of the Master Agreement beginning at step 3 of the Grievance Procedure, except as provided in the Medical Review Procedure described in this Booklet.

If any such grievance is appealed to arbitration in accordance with such provisions, then the arbitrator, insofar as is necessary to the determination of such grievance, has authority only to interpret and apply the provisions of the Pension Agreement. He does not have authority in any way to alter, add to or subtract from any of such provisions, and his decision on any such grievance which is properly referred to him is binding on you, the Company, and the Union. The Company and the Union share equally the costs of the arbitrator's charge and fees, along with any other expenses which they may mutually agree to incur.

The "Master Agreement" referred to in the pension plan provisions is the collective bargaining agreement, which provides specific steps and instructions for pursuing a grievance complaint. Although the plan states that differences "may be taken up as a grievance," similar ostensibly permissive language in a collective bargaining agreement has been held to require exhaustion of administrative remedies before commencement of a lawsuit. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 658–59, 85 S.Ct. 614, 619–20, 13 L.Ed.2d 580 (1965) ("Use of the permissive 'may' does not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor

of a judicial suit. Any doubts must be resolved against such an interpretation.").

The question is whether plaintiffs' claims for breach of defendants' fiduciary duties and fraudulent use of the pension plan, claims grounded in statutory provisions of ERISA, should have been brought first through the plan's appeals procedure. In *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983), the Seventh Circuit applied an exhaustion requirement to alleged violations of statutory rights under ERISA. The plaintiff had brought a class action alleging that Western Electric had discharged its employees for the purpose of preventing their attainment of vested status in the company pension plan in violation of 29 U.S.C.A. § 1140. The court held that the employees' failure to exhaust their administrative remedies under the pension plan barred their statutory claim. *Id.* at 1245. Although plaintiff in *Kross* argued, as have plaintiffs in the current case, that exhaustion should apply only to violations of the provisions of a particular pension plan and not to claims involving ERISA itself, the court dismissed that argument, stating that "well-established federal policy, and supporting case law, favoring exhaustion of administrative remedies prior to bringing an ERISA-based lawsuit in federal court" overrode plaintiffs' contention. *Id.; see also King v. James River-Pepperell, Inc.,* 592 F.Supp. 54, 56 (D.Mass.1984); *Delisi v. United Parcel Service, Inc.,* 580 F.Supp. 1572, 1575 (W.D.Pa.1984).

The Ninth Circuit has reached a contrary conclusion in *Amaro v. Continental Can Co.,* 724 F.2d 747 (9th Cir.1984). In *Amaro,* the Ninth Circuit rejected the exhaustion requirement for ERISA claims where the claim arises from an alleged statutory violation rather than a breach of contract. In so doing, the court distinguished its prior decision in *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980).

In *Amato v. Bernard,* the court had concluded that plaintiffs' ERISA claims were barred due to their failure to exhaust their remedies under the pension plan agreement. The court held the exhaustion

requirement applied to an employee who sought a declaration of the parties' rights and duties under a pension plan subject to ERISA. *Id.* at 568. The court noted that the text of ERISA does not mention an exhaustion requirement. *Id.* at 566. Nevertheless, the court determined that the legislative history of ERISA indicated that Congress had intended for the courts to apply an exhaustion requirement. The court further reasoned that section 503 of ERISA, 29 U.S.C.A. § 1133, which requires pension plans to provide administrative procedure for persons whose claims have been denied, also suggests that claims should be exhausted through those procedures before being brought in court. As further support for its holding, the *Amato v. Bernard* court noted that prior interpretations of the pension plan made during the administrative process would later assist a reviewing court.

We agree with the Seventh Circuit and the *Amato v. Bernard* decision of the Ninth Circuit. Compelling considerations exist for plaintiffs to exhaust administrative remedies prior to instituting a lawsuit. Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decision-making process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated. *See Kross,* 701 F.2d at 1244-45; *Amato v. Bernard,* 618 F.2d 559, 567-68 (9th Cir.1980). In addition, imposing an exhaustion requirement in the ERISA context appears to be consistent with the intent of Congress that pension plans provide intrafund review procedures. 29 U.S.C.A. § 1133; *see also* H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 5038, 5108.

We therefore hold that the district court did not err in holding that plaintiffs must exhaust their remedies under the pension plan agreement before they may bring their ERISA claims in federal court.

AFFIRMED.