[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10109
Non-Argument Calendar
_____

D. C. Docket No. 4:12-cv-00065-KOB

J.W. MOON,

Plaintiff-Appellant,

versus

GOODYEAR TIRE & RUBBER COMPANY (THE),

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 28, 2013)

Before  DUBINA, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant J.W. Moon ("Moon") appeals the district court's grant of Defendant-Appellee The Goodyear Tire & Rubber Company's ("Goodyear") motion to dismiss his complaint. The district court determined that Moon's state law claims were preempted by § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Thereafter, treating Moon's claims as § 301 claims, the court found that dismissal was warranted because Moon failed to exhaust the grievance procedures set forth in the collective bargaining agreement entered between Goodyear and Moon's labor union. After thorough review of the record and consideration of the parties' briefs, we affirm the judgment of the district court.

## I.

Moon worked as a forklift operator at Goodyear's manufacturing plant in Gadsden, Alabama for 37 years. Certain employees at this plant, including Moon, were unionized and represented by the United Steelworkers of America ("the Union"). In 2009, Goodyear and the Union entered into master negotiations which included provisions regarding the out-sourcing of union jobs to non-union members. Specifically, Goodyear and the Union agreed that employees whose jobs were outsourced would be paid a discretionary separation payment in exchange for their agreeing to leave Goodyear. The separation payment was

$2,000 for each year of the employee's service with Goodyear, with a maximum payment of $50,000. The terms of this agreement were memorialized in the Fork Truck Staff Reduction Agreement (hereinafter the "collective bargaining agreement").

In December 2010, Goodyear notified Moon he was eligible for a $50,000 separation payment because his job was set to be outsourced. Moon was presented with a Buyout Application Form to apply for the separation payment. The Buyout Application Form drafted "FOR BARGAINING UNIT EMPLOYEES OF THE GOODYEAR-GADSDEN PLANT" is specifically based upon the "Buyout provisions of the [collective bargaining agreement.]" [R. 6 at 11.] It further stated that "[the employee] understand[s] that [Goodyear] will make the final determination as to whether to accept application in accordance with the [collective bargaining agreement.]" [*Id.*] Moon signed the form as did a Goodyear representative. The form stated that Moon's last day of employment would be December 31, 2010.

In anticipation of his impending retirement, Moon cancelled his disability insurance, signed up for social security, and sought an alternate healthcare plan. Prior to December 31, 2010, however, Goodyear determined it would not outsource Moon's job and refused to pay him the $50,000. As a result, Moon filed

3

suit against Goodyear in Alabama state court for breach of contract.  Goodyear removed the matter to the Northern District of Alabama contending that Moon's breach of contract claim was preempted by federal labor law.  The district court denied Moon's subsequent motion to remand the case to state court.  Thereafter, Goodyear filed a motion to dismiss Moon's complaint, which the district court granted.  Moon then perfected this appeal.

## II.

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).  We also review *de novo* "whether § 301 preempts a state-law claim."  *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1179 (11th Cir. 2010).

## III.

### A.  *Section 301 preemption*

We turn first to whether Moon's state law claims for breach of contract, unjust enrichment, and fraud are preempted by § 301(a) of the LMRA.  This section provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United

4

> States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Thus, § 301 "grants jurisdiction to federal courts to adjudicate employment disputes involving collective bargaining agreements[.]"  *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1338 (11th Cir. 2004).  Section 301 likewise provides the foundation for the preemption doctrine, summarized by the Supreme Court in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877 (1988) in stating:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles-necessarily uniform throughout the Nation–must be employed to resolve the dispute.

*Id.* at 405–06, 108 S. Ct. at 1881.  In determining whether Moon's state law claims require interpretation of the terms of the collective bargaining agreement, we look to the elements of each challenged state law claim.  *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1557 (11th Cir. 1995) (analyzing § 301 preemption of tort claims); *see also Bartholomew*, 361 F.3d at 1338–39 (extending this analysis to a breach of contract claim).  With regard to Moon's state tort claims, § 301 preemption requires the court to determine whether the state law claim "confers nonnegotiable state-law rights on employers or employees independent of any right

5

established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S. Ct. 1904, 1912 (1985). We hold that Moon's three state law claims are all preempted by § 301.

*1. Breach of contract*

In Alabama, "[a] plaintiff can establish a breach-of-contract claim by showing (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's non-performance, and (4) damages." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999) (internal quotation marks omitted). "The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001).

To establish the existence of a contract the court must analyze the terms of the buyout provisions contained in the collective bargaining agreement. The Buyout Application Form drafted "FOR BARGAINING UNIT EMPLOYEES OF THE GOODYEAR-GADSDEN PLANT" is specifically based upon the "Buyout provisions of the Fork Truck Staff Reduction Agreement [i.e., the collective bargaining agreement.]" [R. 6 at 11.] And to determine whether Goodyear

6

breached the Buyout Application Form, we must determine whether it breached the terms supplied in the collective bargaining agreement, as those are the terms specifically referred to in the Buyout Application Form.  Consequently, Moon's breach of contract claim is preempted by § 301.  *See Bartholomew*, 361 F.3d at 1339 ("Because the plaintiff's state-law breach of contract claims are substantially dependent upon an analysis of the collective bargaining agreement, they are preempted by § 301 of the LMRA[.]").

### 2.  *Unjust enrichment*

Moon can recover for unjust enrichment if he can prove that Goodyear "holds money which, in equity and good conscience, belongs to [Moon] or holds money which was improperly paid to [Goodyear] because of mistake or fraud." *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006) (internal quotation marks and emphasis omitted).  In his operative complaint, Moon alleges that Goodyear "has been unjustly enriched as a result of its inducement of [Moon's] actions followed by its refusal to pay [Moon] the separation amount."  [R. 22 ¶ 16.] Hence, Moon claims that Goodyear should have paid him due to his reliance on the Buyout Application Form.  The Buyout Application Form, however, contains no terms of its own, and instead adopts the buyout provisions of the collective bargaining agreement.  Thus, to determine whether equity and good conscience

7

dictates that Moon recover the money he requests, we must interpret the only terms provided—the buyout provisions of the collective bargaining agreement. Because determining whether Moon is entitled to the separation amount clearly "depends upon the meaning of a collective bargaining agreement," *Lingle*, 486 U.S. at 406, 108 S. Ct. at 1881, Moon's claim for unjust enrichment is preempted by § 301.

### 3. Fraud

The elements of fraud are:

(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim . . . that is, one based upon a promise to act or not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive.

*Waddell & Reed, Inc. v. United Investors Life Ins.*, 875 So. 2d 1143, 1160 (Ala. 2003) (internal quotation marks omitted). The false representation Moon directs the court to is the Buyout Application Form. Whether Goodyear's failure to pay the buyout was fraudulent, however, depends entirely on the terms of the collective bargaining agreement, which serve as the terms of the Buyout Application Form. Thus, resolution of Moon's fraud claim "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract[.]" *Allis-*

*Chalmers*, 471 U.S. at 220, 105 S. Ct. at 1916.  Consequently, Moon's fraud claim is preempted by § 301.[1]

## B.  Section 301 Claim

After determining that Moon's state-law claims were preempted by the LRMA, the district court analyzed Moon's claims under § 301.  Although an employee may sue an employer under § 301 for breach of a collective bargaining agreement, the employee first must exhaust the grievance procedures in the collective bargaining agreement.  *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S. Ct. 614, 616 (1965); *see also Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1222 (11th Cir. 1985) ("Employees claiming breach of a collective bargaining agreement or wrongful termination of employment by their employer are bound by that agreement's terms providing a method of resolving disputes between them and their employer.").  Thus, when an employee has not attempted to utilize the dispute resolution mechanisms available to him under the collective bargaining agreement, his independent suit is to be dismissed.  *Mason*, 763 F.2d at 1222.

---

[1] Because Moon's state law claims against Goodyear are all preempted by § 301 of the LMRA, the district court properly denied Moon's motion to remand the case to Alabama state court.  *See Sams v. United Food & Commercial Workers Union, AFL/CIO, CLC*, 835 F.2d 848, 849–50 (11th Cir. 1988).

With regard to any potential § 301 claim, we conclude that such claims were also appropriately dismissed. Such claims are not cognizable because Moon "fail[ed] to make use of the grievance procedure established in the collective-bargaining agreement[.]" *Allis-Chalmers*, 471 U.S. at 220–21, 105 S. Ct. at 1916. The grievance procedure explicitly requires that an employee who has spoken to his area manager about a grievance and is unsatisfied, reduce his grievance to writing and sign the complaint.[2] [R. 4-1 at 10.] Moon does not contend that he followed this mandate. Moon instead argues that he in effect complied with the grievance procedures because the Union failed to assist him when he sought their help. This contention is not persuasive as the grievance procedures above dictate that Moon was responsible for initiating the procedures, not the Union.[3] Therefore, the district court properly dismissed his § 301 claim.

IV.

---

[2] Moon explicitly refers to the 2009 master negotiations in his operative complaint, [R. 22 ¶ 4], and this document is central to his § 301 claim. Therefore, we may consider it at the motion to dismiss stage. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

[3] Moon acknowledges that his claim is against Goodyear, and is not a hybrid claim against Goodyear and the Union. [*See* Appellant's Reply Br. at 5.]

10

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED**.