PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-8322

_____

D. C. Docket No. 1:96-CV-593-ODE


VERDALLIA TURNER,

Plaintiff-Appellant,

versus


AMERICAN FEDERATION OF TEACHERS LOCAL 1565, ANITA
BROOKS; GLYNIS TERRELL, Individually, Jointly, and in
their official capacity,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(April 7, 1998)**



Before BLACK, Circuit Judge, and KRAVITCH and HENDERSON, Senior
Circuit Judges.



KRAVITCH, Senior Circuit Judge:

Verdallia Turner ("Turner") appeals the district court's grant of summary judgment in favor of defendants-appellees on her claims of wrongful discharge and tortious interference with employment. We conclude that the district court properly granted summary judgment on both claims, although we affirm the grant of summary judgment on the tortious interference claim for reasons different than those relied upon by the district court.[1]  Accordingly, we affirm the judgment of the district court.

I.

Turner was employed as a field representative by the American Federation of Teachers Local 1565 ("AFT").  Her employment contract was governed by a collective bargaining agreement between AFT and the Atlanta Staff Union ("ASU").  The grievance procedures outlined in the agreement[2] allow an employee who believes she has been the

---

[1]  We must affirm the judgment of the district court if the result is correct even if the district court relied upon a wrong ground or gave a wrong reason.  See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 88, 63 S. Ct. 454, 459 (1943), cited in Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1473 (11th Cir. 1997).

[2]  The relevant section of the contract provides in full:

Any employee's grievance shall be processed as follows:
     Step 1.  Within ten (10) days following knowledge of the act or condition that is the basis of the complaint, the employee may file a grievance with the president.  There shall be a conference within five (5) days at which time the grievant may designate a representative to present the grievance.  A written decision shall be made within five (5) days after the conference.
     Step 2.  If the grievance is not settled at the first level or if no decision has been rendered within the prescribed time limits, the employee has five (5) days in which to appeal the grievance to the executive council.  A

victim of an adverse action to file a grievance with the AFT President within ten days of the action. If the grievance is not settled within the contractual time limit or if the employee wishes to appeal, then the employee may bring the grievance to AFT's Executive Council. If the grievance is not settled in a timely manner by the Executive Council or if the employee is dissatisfied with the Council's decision, then the employee may request arbitration. At all stages of the grievance process, the employee is entitled to designate a representative to present the grievance.

On February 17, 1995, Anita Brooks ("Brooks"), the President of AFT, fired Turner on the grounds of insubordination and involvement in internal political activity. Turner, represented by Michael Axon ("Axon") of ASU, filed a grievance on the same date.[3] Brooks denied the grievance on February 22, and the Executive

---

hearing shall be held within ten (10) days of the filing of the grievance. The employee may designate a representative to present the grievance. A decision in writing shall be made by the executive council within five (5) days after the hearing.
　　Step 3. If the grievance is not settled at the second level or if no decision has been rendered within the prescribed time limits, the employee has five (5) days in which to appeal to a panel of arbitrators. The arbitration panel shall consist of three members. One chosen by the president, one chosen by the ASU employee and one mutually agreed on by the president and the ASU employee. The hearing must be held within fifteen (15) days of filing at this level. The employee may also designate a representative at this level to present the grievance. The decision by the panel shall be made in writing within five (5) days after the hearing and shall be binding on both parties.

Contract of Atlanta Staff Union at 9, § 12, ¶ 3.
[3] Axon also filed two unfair labor practices charges on Turner's behalf with the National Labor Relations Board ("NLRB").

Council denied the appeal on March 20. Turner then sought to arbitrate the dispute. In accordance with the collective bargaining agreement, Turner and AFT each selected one arbitrator. The parties then selected a third arbitrator, but that individual withdrew on May 15 because the parties could not agree on a date to begin arbitration. Thereafter, Axon sent Brooks at least two memoranda requesting that a meeting be set up in order to select another arbitrator. On June 5, Brooks informed Axon that she did not want to select another arbitrator and instead wanted the case to go to mediation. Axon then wrote to the NLRB requesting the NLRB's intervention on the grounds that appellees were not complying with the contractual grievance procedures.

Despite AFT's apparent repudiation of the arbitration process on June 5, discussions about arbitration continued thereafter. Glynis Terrell ("Terrell") replaced Brooks as AFT President in June.[4] On July 26, Terrell sent Turner a letter that included two settlement offers[5] and that stated that AFT was prepared to proceed with arbitration if Turner refused the offers. On July 28, Turner sent a letter in response indicating that she wanted to be "made whole" by being reinstated with back-pay and benefits.

---

[4] During June, Terrell talked to Turner about hiring Turner as an AFT consultant, but the AFT Executive Council never acted on the matter.

[5] The letter stated that the Executive Council had decided to: (1) offer Turner her old job back without back-pay or benefit accrual; or (2) give Turner back-pay from the date of her termination through July 31 without reinstatement.

On August 7, Terrell denied a request by Axon to hold a meeting to discuss Turner's grievance, and Terrell indicated that AFT wanted to proceed to arbitration. On August 21, Axon sent a memorandum to Terrell again requesting that AFT select a third arbitrator and that a meeting be held to discuss the arbitration procedure.

At Turner's request, Axon prepared a list of three options to resolve Turner's grievance. On September 15, Turner and three members of the Executive Council signed a handwritten agreement in principle, to be finalized on September 25, stating that Turner would terminate her grievance and unfair labor practices charge in exchange for approximately $27,000. Turner then told Axon that she no longer needed his services. On September 29, Turner prepared a memorandum and agreement that appeared to be an attempt to memorialize the September 15 discussion but that contained different terms than those agreed upon in that meeting. The agreement prepared by Turner was never signed by any of the parties. At some point thereafter, Turner inquired about the settlement agreement, and Terrell told her that AFT was seeking a team of attorneys.[6]

Turner then filed suit in Georgia Superior Court against AFT, Brooks, and Terrell alleging: (1) violation of the terms and conditions of her employment contract; (2) tortious interference

_____

[6] Turner testified during a deposition that Terrell told her that AFT "needed to seek a team of attorneys now" and that Terrell "explained that [AFT officials] were going to an attorney, and that was it." Turner Dep. at 46-47.

with employment; and (3) defamation.[7] Appellees removed the case to federal district court on the grounds that the case involved a federal question, specifically that the breach of contract claim was governed by section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) ("section 301(a)"). After appellees moved for summary judgment, the district court ruled that Turner failed to exhaust available remedies prior to bringing suit, as required by federal law. The district court thus granted summary judgment to appellees on the breach of contract claim. Because Turner did not demonstrate "interference by one who is a stranger to [the employment] relationship,"[8] the district court also granted summary judgment to appellees on Turner's claim for tortious interference with employment. The district court further ruled that one of Turner's four defamation allegations was preempted by section 301(a). Declining to exercise supplemental jurisdiction over Turner's three remaining defamation allegations, see 28 U.S.C. § 1367(c)(3), the district court remanded the case to state court.[9] Turner appeals the district court's resolution on summary judgment of the wrongful discharge and tortious interference with employment claims.[10]

---

[7] Turner's defamation claims were based upon four statements about Turner made by Brooks in early 1995.

[8] Order at 10.

[9] Despite arguing to the contrary in appellees' brief, counsel for appellees conceded at oral argument that this court has authority to review the district court's order on direct appeal. See 28 U.S.C. § 1447(d); Quackenbush v. Allstate Ins. Co., 116 S. Ct. 1712 (1996); In re: Bethesda Memorial Hosp., Inc., 123 F.3d 1407 (11th Cir. 1997).

[10] Turner does not appeal the district court's resolution of her defamation claims.

II.

We review a grant of summary judgment <u>de novo</u>, applying the same legal standard as the district court. <u>See</u> <u>Gordon v. Cochran</u>, 116 F.3d 1438, 1439 (11th Cir. 1997). Summary judgment is appropriate if, after examining the entire record, the court concludes that there is no genuine issue of material fact. <u>See</u> Fed. R. Civ. P. 56(c).


A.

Turner contends that the district court erred in granting summary judgment in favor of appellees on the wrongful discharge claim. Turner does not contest that an employee must attempt to exhaust contractual remedies prior to bringing suit under section 301(a). <u>See</u> <u>Vaca v. Sipes</u>, 386 U.S. 171, 184-85, 87 S. Ct. 903, 914 (1967). Instead, Turner relies upon an exception to the general exhaustion rule: an employee may bring suit even absent exhaustion if the employer <u>repudiates</u> the contractual remedies. As the Court explained in <u>Vaca</u>,

> An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to the repudiation of those contractual procedures. <u>Cf.</u> <u>Drake Bakeries, Inc. v. Local 50, Am. Bakery, etc. Workers</u>, 370 U.S. 254, 260-63. <u>See generally</u> 6A Corbin, Contracts § 1443 (1962). In such a situation . . . the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action.

<u>Id.</u> at 185-86; 87 S. Ct. at 914; <u>see also</u> <u>Pyles v. United Air Lines, Inc.</u>, 79 F.3d 1046, 1052-53 (11th Cir. 1996) (stating that employees can avail themselves of remedies in federal court without

7

exhausting administrative remedies if their employer repudiates the grievance machinery or the union wrongfully refuses to process a grievance).

The district court ruled that Turner did not exhaust her contractual remedies because she did not proceed to arbitration, as required by the collective bargaining agreement. The district court found that AFT, through Brooks, repudiated its contractual remedies on June 5 by informing Axon – Turner's representative – that AFT intended to forego arbitration and instead wished to pursue mediation. Despite finding a repudiation, the district court ruled that AFT timely retracted its repudiation by informing Axon on August 7 that AFT wished to proceed to arbitration. Because Turner neither acted in reliance on the June 5 repudiation nor indicated to AFT that she considered the repudiation to be final, the district court ruled that AFT's subsequent retraction of its repudiation was valid.

On appeal, Turner makes three arguments. First, she claims that an employer cannot retract its repudiation of contractual remedies. We find little merit in this argument. It is beyond dispute that the substantive law to be applied in suits under section 301(a) "is federal law, which courts must fashion from the policy of our national labor laws." Textile Workers Union v. Lincoln Mills of Ala., 353 U.S. 448, 456, 77 S. Ct. 912, 918 (1957). In carrying out this mandate, federal courts have looked to general contract principles in fashioning a federal common law to govern disputes arising under section 301(a). Just as the Court

8

relied upon contract principles in describing the consequences of repudiation in Vaca, see 386 U.S. at 184-85, 87 S. Ct. at 914 (citing 6A Corbin, Contracts § 1443 (1962)), so we look to such principles here in determining that an employer may retract its repudiation of contractual remedies, see Restatement (Second) of Contracts § 256 (1979) ("[R]epudiation is nullified by retraction if notice of the retraction comes to the attention of the injured party before he acts in reliance on the repudiation or indicates to the other party that he considers the repudiation to be final."), cited in Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 604 (6th Cir. 1988).

Second, Turner claims that the district court erred in finding that AFT's only repudiation occurred on June 5. According to Turner, AFT again repudiated its contractual remedies in late September, when the settlement negotiations failed and Terrell informed Turner that AFT was seeking a team of attorneys. Turner argues that AFT effectively repudiated its remedies because Turner reasonably believed that AFT had decided to proceed to court, as opposed to arbitration. Moreover, Turner contends that AFT did not retract this repudiation.

We disagree with Turner's interpretation of the record. According to Turner, Terrell told Turner that AFT "needed to seek a team of attorneys now" and that AFT officials "were going to an attorney, and that was it."[11] We do not believe that under the circumstances in this case a mere statement by an employer's agent

---

[11] Turner Dep. at 46-47.

that the employer will "seek a team of attorneys" amounts to a repudiation of contractual remedies. Because an employee in Turner's position is entitled to representation at an arbitration hearing, see Contract of Atlanta Staff Union at 9, § 12, ¶ 3 ("The employee may also designate a representative at this level [i.e. Step 3 – arbitration] to present the grievance."), a mere declaration of intent by an employer likewise to seek legal counsel during the grievance process does not reasonably constitute a repudiation of contractual remedies.[12] Terrell's cryptic statement thus did not amount to a repudiation of contractual remedies, and AFT's retraction in July of any prior repudiation required Turner to pursue arbitration as required by the agreement before filing suit for wrongful discharge.

Finally, Turner argues that even if the district court correctly found that Turner had no excuse for failing to exhaust her contractual remedies, the court nevertheless should have retained jurisdiction over the case and remanded it for arbitration. Turner offers no authority that squarely supports her claim. Turner relies in part upon Boone v. Armstrong Cork Co., 384 F.2d 285 (5th Cir. 1967), which held that a discharged employee did not exhaust her contractual remedies but that the "failure to resort to the grievance procedure was caused by a misunderstanding

---

[12] We recognize that it is unclear from the deposition testimony whether Terrell told Turner that "that was it" or rather whether the statement represented Turner's interpretation of the conversation. Even if Terrell said "that was it," however, that statement alone is insufficient to create a genuine issue of material fact as to whether AFT repudiated the contractual remedies.

by all parties concerned as to the availability of the procedure." Id. at 290. The court thus remanded the case to the district court "with directions to suspend further proceedings until the parties have had reasonable opportunity to exhaust the contractual grievance procedure." Id. Boone, however, does not control the case before us. Because the district court in this case was correct in holding that AFT retracted any repudiation of its contractual remedies, Turner, unlike the employee in Boone, can offer no excuse for her failure to proceed to arbitration.

Turner also contends that remand is appropriate because even if AFT did not actually repudiate its contractual remedies, AFT's actions nonetheless left her confused about whether AFT had repudiated.[13] Our decision in Redmond v. Dresser Indus., Inc., 734 F.2d 633 (11th Cir. 1984), however, forecloses Turner's argument. In Redmond, the court held that the employee presented no genuine evidence to rebut the employer's contention that the employee failed to exhaust contractual remedies. Id. at 636. Notably, the Redmond court affirmed the district court's grant of summary judgment, but did not order the district court to retain

---

[13] In support of this contention, Turner relies upon Mitchell v. Hercules, Inc., 410 F. Supp. 560, 570 (S.D. Ga. 1976), a case arising under somewhat different circumstances. In Mitchell, the district court ruled that factual issues were raised as to whether employee's union had breached its duty of fair representation, which ordinarily would excuse the employee's failure to exhaust remedies. The court, however, denied the employee's exhaustion claim because it determined that the collective bargaining agreement allowed the employee to pursue his grievance individually. Rather than dismiss the case for lack of subject matter jurisdiction, the district court retained jurisdiction while directing the employee to pursue arbitration individually.

11

jurisdiction over the case. Finally, Turner does not explain how she has been prejudiced by the district court's actions. For example, Turner does not indicate why she cannot proceed to arbitration now, as authorized by the collective bargaining agreement. We therefore conclude that the district court properly granted summary judgment in favor of AFT on the wrongful discharge claim and correctly dismissed that claim.

## B.

In order to prevail on a claim for tortious interference with employment under Georgia law, a plaintiff must show: (1) the existence of an employment relationship; (2) interference by one who is a stranger to that relationship; and (3) resulting damage to the employment relationship. See Lee v. Gore, 221 Ga. App. 632, 634, 472 S.E.2d 164, 166-67 (1996). The district court granted summary judgment to defendants on this claim on the grounds that AFT, as Turner's employer, was not a "stranger" to the employment relationship and that Brooks and Terrell, as agents of AFT, likewise could not be considered to be strangers to Turner's employment relationship.

On appeal, Turner argues that the district court erred in granting summary judgment to Brooks and Terrell on the tortious interference with employment claim. Turner asserts that the evidence raises the reasonable inference that Brooks and Terrell acted against Turner out of self-interest because they feared that Turner would attain a powerful position in AFT. Because Brooks and

12

Terrell may have acted in their own interests, as opposed to AFT's interests, Turner claims that her tortious interference with employment claim against them should survive summary judgment. Cf. Nottingham v. Wrigley, 221 Ga. 386, 391, 144 S.E.2d 749, 753 (1965) (holding that evidence was sufficient to require submission to jury of question of whether director of corporation acted maliciously to procure a breach of plaintiff's contract of employment by the corporation and interfere with his property rights); Moore v. Barge, 210 Ga. App. 552, 554, 436 S.E.2d 746, 749 (1993) ("One who is sued in his personal capacity, whether the alter ego, an officer or agent of a corporation, may not escape personal liability for his tortious misconduct damaging employees or third persons by hiding behind the corporate veil . . . .") (citation omitted).

We need not resolve whether under Georgia law Turner could prevail on her tortious interference claim, however, because we conclude that the claim is preempted by section 301(a). Turner's employment relationship with AFT is governed by a collective bargaining agreement; as the Supreme Court has ruled, if the resolution of a state-law claim depends upon interpreting the terms of a collective bargaining agreement, then the state-law claim is preempted by the LMRA. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S. Ct. 1904, 1915 (1985); see also Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 405, 108 S. Ct. 1877, 1881 (1988). Although this circuit has not addressed the issue directly, other circuits have held that tortious interference with employment claims required reference to the terms of the applicable

13

collective bargaining agreement and thus that the claims were preempted. In <u>Magerer v. John Sexton & Co.</u>, 912 F.2d 525, 530 (1st Cir. 1990), for example, the court ruled that an employee's claim against his supervisor for intentional interference with contractual relations was preempted by the LMRA. Similarly, in <u>Johnson v. Anheuser Busch, Inc.</u>, 876 F.2d 620, 624 (8th Cir. 1989), the court ruled that an employee's claim against fellow employees for tortious interference with contractual relations required an examination of the collective bargaining agreement and thus was preempted by section 301(a). <u>Cf.</u> <u>Lingle</u>, 486 U.S. at 408-09, 108 S. Ct. at 1883 (holding that a claim for retaliatory discharge does not require construing the collective bargaining agreement and thus is not preempted); <u>Dougherty v. Parsec, Inc.</u>, 872 F.2d 766, 770-71 (6th Cir. 1989) (holding that tortious interference with contract claim under Ohio law was not preempted by section 301(a) because the claim did not require a showing of an actual breach of the contract and thus did not require reference to the terms of the agreement).

Because resolution of Turner's tortious interference with employment claim would require interpretation of the terms of the collective bargaining agreement,[14] we hold that this claim is preempted by the LMRA. We therefore affirm the district court's decision to grant summary judgment in favor of appellees on the

---

[14]  Because Turner's tortious interference claim is based solely upon her theory of wrongful discharge, resolution of the claim would require a determination of whether the terms of the collective bargaining agreement precluded such an action.

tortious interference with employment claim, although for reasons different than those stated by the district court.  See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 88, 63 S. Ct. 454, 459 (1943) (stating that the decision of the lower court must be affirmed if the result is correct even though the lower court relied upon a wrong ground or gave a wrong reason), cited in Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1473 (11th Cir. 1997).

## III.

The judgment of the district court in favor of appellees is AFFIRMED.