[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-16393

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 8, 2004
THOMAS  K. KAHN
CLERK

D. C. Docket No. 02-00051 CV-2-WDO-5

RONALD BARTHOLOMEW,
BENNY CHILDERS, et al.,

Plaintiffs-Appellants,

versus

AGL RESOURCES, INC.,
ATLANTA GAS LIGHT COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(March 8, 2004)**

Before EDMONDSON, Chief Judge, COX, Circuit Judge, and PAUL*, District Judge.

COX, Circuit Judge:

_____

*Honorable Maurice M. Paul, United States District Judge for the Northern District of Florida, sitting by designation.

Five former field service representatives of Atlanta Gas Light Company ("Atlanta Gas") appeal the district court's grant of summary judgment in favor of AGL Resources, Inc. and Atlanta Gas on their Georgia state-law claims of breach of contract, intentional infliction of emotional distress, tortious interference with business relations, and defamation. For the following reasons, we dismiss the appeal of Charlie Johnson, and as to the other plaintiffs, we affirm in part, vacate in part, and remand.

## I. BACKGROUND & PROCEDURAL HISTORY

The plaintiffs – Ronald Bartholomew, Benny Childers, James Higgins, Lester Moss, and Charlie Johnson – were employed by Atlanta Gas as Class A Field Service Representatives in Macon, Georgia. During a statewide reduction in force in March 2000, Bartholomew, Childers, and Higgins were "bumped" out of their positions by field service representatives with more seniority. These three employees were then permitted to transfer to other positions held by field service representatives with less seniority – to "bump" less senior field service representatives – but they declined the opportunity to do so and were laid off on March 10, 2000. Moss and Johnson, by contrast, were among the least senior field service representatives, and they did not have enough seniority to "bump" other field service representatives. As a result,

2

Moss and Johnson were laid off on March 10, 2000, without having been afforded the opportunity to transfer.

The plaintiffs' employment with Atlanta Gas was governed by a collective bargaining agreement between Atlanta Gas and their union. Bartholomew, Higgins, and Childers complained to their union steward about their layoffs, and they submitted written grievances. Johnson also complained to his union steward about his layoff, and Moss complained to an individual whom he believed to be his union steward about his layoff, but neither Johnson nor Moss submitted written grievances.

Pursuant to Article 13 of the collective bargaining agreement, the union made a formal request for a grievance meeting on behalf of Bartholomew, Higgins, and Childers. After the meeting, on May 11, 2000, Atlanta Gas notified the union and these three employees that their grievances had been denied. Under the terms of Article 14 of the collective bargaining agreement, the union then had ten days to submit the employees' grievances to arbitration, but the union took no further action.

On September 18, 2001, Bartholomew, Higgins, Childers, Moss and Johnson filed a complaint in Georgia state court. In the four-count complaint, they asserted claims under Georgia law for breach of contract, intentional infliction of emotional distress, tortious interference with business relations, and defamation; AGL

3

Resources, Inc. and Atlanta Gas were named as defendants.[1] The defendants removed the action to the United States District Court for the Northern District of Georgia, and the action was then transferred to the Middle District of Georgia. The gravamen of the plaintiffs' complaint was that the defendants terminated their employment in violation of the collective bargaining agreement and that the defendants' management employees made statements that gave rise to tort liability.

AGL Resources, Inc. and Atlanta Gas filed a motion for summary judgment as to all of the plaintiffs' claims. On October 22, 2002, the district court entered an order granting the defendants' motion. In its order, the court reached the following conclusions: (1) the plaintiffs' state-law claims were preempted by § 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185; (2) to the extent that the plaintiffs' preempted state-law claims could be treated as "hybrid" § 301/fair representation claims under the LMRA, these claims were barred by the six-month statute of limitations; and (3) even if the plaintiffs' state-law claims were not preempted by the LMRA, Moss and Johnson's claims were due to be dismissed because they failed to avail themselves of the grievance procedure established in the

---

[1] A third defendant, the chief executive officer of Atlanta Gas, was voluntarily dismissed by stipulation of the parties.

collective bargaining agreement and the claims of Bartholomew, Childers, and Higgins were barred by the one-year state statute of limitations.

The plaintiffs timely filed a notice of appeal, and the notice includes all five plaintiffs: Bartholomew, Childers, Higgins, Moss, and Johnson. But Johnson was not named on the appellants' initial brief, nor was he listed in the certificate of interested persons. The omission of Johnson was brought to the appellants' attention by the defendants in their answer brief, but the appellants' reply brief again failed to list Johnson and it did not mention Johnson's omission. We are left to conclude that Johnson has not filed a brief in this appeal, and as a consequence, we dismiss his appeal for failure to prosecute. *See* 11th Cir. R. 42-1(b).

## II. ISSUES ON APPEAL & STANDARDS OF REVIEW

The only issue on appeal is whether the district court erred when it granted summary judgment in favor of AGL Resources, Inc. and Atlanta Gas as to all of the plaintiffs' claims. We review a district court's grant of summary judgment de novo, and we view the evidence in the light most favorable to the nonmoving party. *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1203 (11th Cir. 2003). Summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Whether the LMRA preempts a state-law claim is a question of law

5

which we review de novo. *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1556 (11th Cir. 1995).

## III. PREEMPTION DISCUSSION

Section 301(a) of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). This section grants jurisdiction to federal courts to adjudicate employment disputes involving collective bargaining agreements, and it embodies the policy that federal law, fashioned from national labor law, should provide the substantive law that applies in § 301(a) suits. *See Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456, 77 S. Ct. 912, 918 (1957); *Lightning*, 60 F.3d at 1556.

Accordingly, § 301 provides the foundation for the preemption doctrine that the Supreme Court concisely summarized in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877 (1988):

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law

6

principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute.

*Id.* at 405-06, 108 S. Ct. at 1881. This preemption doctrine exists to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes," *id.* at 404, 108 S. Ct. at 1880, but it is important to note that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . ." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 1911 (1985). The Supreme Court has instructed that a state-law claim is preempted by § 301 of the LMRA if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract," or, stated another way, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," the state-law claim has been preempted. *Id.* at 213, 220, 105 S. Ct. at 1912, 1916.

In light of these principles of § 301 preemption, we now turn our attention to each of the plaintiffs' four state-law claims to determine whether these claims have been preempted by the LMRA. If one or more of the plaintiffs' claims have not been preempted, we must then consider the alternative grounds for affirmance asserted by the defendants on appeal.

7

A.    Breach of Contract

In Count I, the plaintiffs assert a state-law breach of contract claim against AGL Resources, Inc. and Atlanta Gas. In particular, they allege that "[b]y entering into the collective bargaining agreement with the plaintiffs, Defendants have expressly assumed contractual and fiduciary obligations to the plaintiffs." (R.1-1 ¶ 12.) Moreover, the plaintiffs allege the defendants "have violated their contractual obligations by termination of these Plaintiffs' employment in manners contrary to the terms of the collective bargaining agreement." (*Id.* ¶ 13.) It is undisputed that the plaintiffs' breach of contract claim refers solely to the collective-bargaining agreement that governed the plaintiffs' employment with the defendant.

The elements of a right to recover for a breach of contract under Georgia law are simply "the breach and the resultant damages to the party who has the right to complain about the contract being broken." *Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 469 S.E.2d 712, 713 (1996). To determine whether the defendants breached the collective-bargaining agreement, there is no doubt that we would be called upon to consider the terms of the labor contract. Because the plaintiffs' state-law breach of contract claims are substantially dependent upon an analysis of the collective bargaining agreement, they are preempted by § 301 of the LMRA, and we affirm the

district court's grant of summary judgment in favor of AGL Resources, Inc. and Atlanta Gas as to Count I of the complaint.

B.    Intentional Infliction of Emotional Distress

In Count II, the plaintiffs assert a state law claim for intentional infliction of emotional distress. Their complaint includes only the most general allegations regarding this claim. For instance, they allege in Count II that the defendants "have behaved in an extreme and/or outrageous manner," and that this conduct "gave rise to intense feelings of anxiety, depression, and extreme outrage." (R.1-1 ¶ 15.) In the "Factual Background" of the complaint, the plaintiffs allege that they "have been placed under tremendous stress and economic pressures as a direct result of the actions and omissions of [the defendants]," and the plaintiffs further allege that they "have suffered loss of weight, unable [sic] to sleep, . . . high blood pressure, feelings of humiliation, depression and severe mortification." (*Id.* ¶ 10.) Although the plaintiffs' complaint does not specify the outrageous or extreme conduct that provides the foundation for their intentional infliction of emotional distress claims, it is clear from the record and the briefs on appeal that their claims are based on their belief that

they were not provided with proper notice of their termination and that they were not

allowed a meaningful opportunity to consider their option to transfer.[2]

Under Georgia law, a plaintiff must prove four elements to sustain a claim for

intentional infliction of emotional distress: "(1) [t]he conduct must be intentional or

reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a

causal connection between the wrongful conduct and the emotional distress; and (4)

[t]he emotional distress must be severe." *Northside Hosp., Inc. v. Ruotanen*, 541

S.E.2d 66, 68-69 (2000); *see also Yarbray v. S. Bell Tel. & Tel. Co.*, 409 S.E.2d 835,

837 (1991). For us to determine whether the defendants' conduct in terminating the

plaintiffs was "extreme and outrageous," we necessarily must consider the terms of

the collective-bargaining agreement that governs the plaintiffs' employment. As a

consequence, we conclude that our evaluation of the plaintiffs' intentional infliction

of emotional distress claims would be substantially dependent upon an analysis of the

labor agreement, and we hold that these claims are preempted by the LMRA.

---

[2] For instance, the plaintiffs assert that their opportunity to transfer was not "meaningful," (Appellants' Br. at 2), and that they were "terminated without notice in an egregious and harassing manner," (*id.*). Moreover, they assert that "[t]he very manner of the terminations was done in a manner that insulted, humiliated and embarrassed each of the plaintiffs due to their long-term employment and caused all the factual elements of a state law cause of action for intentional infliction of emotional distress." (*Id.* at 3.)

Accordingly, we affirm the district court's grant of summary judgment in favor of AGL Resources, Inc. and Atlanta Gas as to Count II of the complaint.[3]

C.     Tortious Interference with Business Relations

In the third count of the complaint, the plaintiffs assert a claim for tortious interference with business relations. The plaintiffs allege that the chief executive officer of Atlanta Gas and other agents of AGL Resources, Inc. "took affirmative actions to jeopardize the business opportunities of Plaintiffs." (R.1-1 ¶ 17.) More specifically, according to the plaintiffs, the defendants tortiously interfered with their "contracts of employment with potential subsequent employers," and the chief executive officer "made defamatory comments over the last year as to the status and capabilities" of the plaintiffs. (*Id.*) The plaintiffs allege that the defendants' representatives made statements, both before and after their termination, that hindered the plaintiffs in their subsequent attempts to obtain employment; for example, the

---

[3]     This result is wholly consistent with this court's prior holding in *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551 (11th Cir. 1995). In *Lightning*, we concluded that the plaintiff's claim for intentional infliction of emotional distress was not preempted by the LMRA. *Id.* at 1557. In that case, however, the intentional infliction of emotional distress claim was predicated upon the verbal and physical abuse that was brought to bear upon the plaintiff, and the court concluded that it could evaluate the allegedly "extreme and outrageous" conduct of the defendant without considering the collective-bargaining agreement. *Id.* Notably, in *Lightning*, this court acknowledged that analyzing an intentional infliction of emotional distress claim may well require consideration of the terms of a collective-bargaining agreement. *Id.* We conclude, in this case, that it does.

11

plaintiffs contend that a representative of Atlanta Gas told contractors that they should not hire employees who had been laid off by Atlanta Gas.

To establish a cause of action for tortious interference with business relations under Georgia law, a plaintiff must show that the defendant, (1) acting improperly and without privilege (2) and acting purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff (4) for which the plaintiff suffered some financial injury. *Perimeter Realty v. GAPI, Inc.*, 533 S.E.2d 136, 144-45 (2000). To the extent that the plaintiffs' tortious interference with business relations claims are based upon statements made prior to their termination or during the grievance process, we conclude that their claims are preempted by the LMRA. In such a circumstance, to determine whether the defendants' alleged statements were "improper" and "without privilege," we necessarily would need to consider the terms of the collective-bargaining agreement, including, for instance, the Management Rights clause of that agreement. However, to the extent that the plaintiffs base their tortious interference with business relations claims on statements made by company representatives to prospective employers after their layoff and after the grievance procedure was concluded, we hold that their claims are not preempted. In evaluating such a claim,

12

we need not consult the collective-bargaining agreement.[4]  As a consequence, the

district court erred when it granted summary judgment in the defendants' favor on the

ground that all of the plaintiffs' tortious interference with business relations claims

were preempted.[5]

---

[4]  First, the defendants contend that the plaintiffs offered only inadmissible hearsay at the summary judgment stage regarding the post-termination statements.  Because the district court did not address this argument in its order, we decline to do so here and remand for further consideration.

Second, the defendants contend that the plaintiffs waived their argument that the post-termination statements were made outside of the collective-bargaining agreement, and thus were not preempted by the LMRA.  Having reviewed the record, we conclude that the argument was not waived.  (R.2-31 at 7-8.)

Third, the defendants contend that even if a company representative made an admissible statement following the plaintiffs' termination that could give rise to a tortious interference claim, their claims would still be preempted by the LMRA.  In support of this contention, the defendants point to *Turner v. American Fed'n of Teachers Local 1565*, 138 F.3d 878 (11th Cir. 1998).  In *Turner*, we held that a tortious interference with employment claim was preempted by the LMRA. *Id.* at 884.  But *Turner* is distinguishable.  The plaintiff in *Turner* had been terminated from her position with the American Federation of Teachers ("AFT"), and she brought suit against AFT.  In her suit, she alleged that AFT (and two former executive officials of AFT) tortiously interfered with her employment *with AFT*, which was governed by a collective bargaining agreement.  In holding that her tortious interference with employment claim was preempted by the LMRA, we noted that resolution of her state-law claim would depend upon the terms of the collective bargaining agreement because her claim was "based solely upon her theory of wrongful discharge." *Id.* at 884 n.14.  By contrast, in this case, Count III does not allege that the plaintiffs were wrongfully discharged from Atlanta Gas.  Instead, the plaintiffs contend that the defendants interfered with their relationship with a prospective employer.  As a consequence, we are not compelled by *Turner* to conclude that the plaintiffs' tortious interference with business relations claims are preempted by the LMRA.

[5]  On appeal, the defendants contend that even if § 301 of the LMRA does not preempt the plaintiffs' tortious interference claims, the defendants are nonetheless entitled to summary judgment as to these claims because they fail as a matter of law.  But the district court did not reach the merits of the state-law claims asserted by the plaintiffs.   Because the district court did not address their argument in the first instance, we decline to do so here.

D.    Defamation

In the final count of the complaint, the plaintiffs assert a state-law claim of defamation. The plaintiffs allege that the defendants "made charges against the plaintiffs in reference to their trade and profession calculated to injure" them. (R.1-1 ¶ 20.) Although the complaint again is silent regarding the facts that underlie this claim, it is clear following our review of the record and the briefs on appeal that the plaintiffs base their defamation claim on essentially the same statements that form the foundation of their tortious interference with business relations claim. In particular, the plaintiffs' defamation claims are based on alleged statements by a company official that the plaintiffs "were laid off for a reason." (R.2-25 at 140-141; R.2-29 at 84-87; R.2-30 at 245.)

For essentially the same reasons articulated above regarding the tortious interference with business relations claims, the plaintiffs' defamation claims are not preempted by the LMRA to the extent that they are based upon defamatory statements that occurred after their termination. Under Georgia law, an oral defamation action lies when (1) a defendant makes charges against the plaintiff in reference to his trade, office, or profession, if such charges are calculated to injure him therein; (2) the charge is false; (3) the charge is made with malice; and (4) the communication is not privileged. Ga. Code Ann. §§ 51-5-4(a)(3), 51-5-5, 51-5-6, 51-5-7. Because the

14

plaintiffs' defamation claim is based upon alleged statements made by an Atlanta Gas official to a contractor after they were terminated, our analysis of their defamation claims under Georgia law is not substantially dependent upon the terms of the collective-bargaining agreement. Simply stated, the elements of the plaintiffs' post-termination defamation claim do not turn upon the terms of their labor contract with the defendants. Accordingly, we hold that the district court also erred when it granted summary judgment in the defendants' favor on the ground that all of the plaintiffs' defamation claims were precluded by the LMRA.[6]

E.  "Hybrid" Section 301/Fair Representation Claim

The district court, having concluded that the plaintiffs' state-law claims were preempted by the LMRA, apparently heeded the Supreme Court's invitation in *Allis-Chalmers* and treated the plaintiffs' state-law claims as claims under § 301. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S. Ct. 1904, 1916 (1985) (noting that when the resolution of a state-law claim is substantially dependent upon the terms of a collective bargaining agreement, the claim should be dismissed as preempted or treated as a § 301 claim). But to prevail on their § 301 claims against

---

[6]  The defendants contend that even if the defamation claims are not preempted by the LMRA, they are still entitled to summary judgment because the defamation claims fail as a matter of law. Again, the district court did not reach this argument. Accordingly, we leave this issue to the district court to consider in the first instance.

AGL Resources, Inc. and Atlanta Gas, the plaintiffs must show both that the employer violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564, 110 S. Ct. 1339, 1344 (1990). As a consequence, although the plaintiffs' complaint only names their employer, the district court properly characterized the plaintiffs' § 301 claims as "hybrid" § 301/fair representation claims. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S. Ct. 2281 (1983) (noting that the employee may sue the employer, the union, or both, but that the case he must prove is the same in all circumstances). Because the plaintiffs' preempted state-law claims are properly construed as hybrid § 301/fair representation claims, the six-month statute of limitations from § 10(b) of the National Labor Relations Act applies. *Id.* at 169, 103 S. Ct. at 2293. The court did not err when it concluded that the statute of limitations began to run when the plaintiffs were informed that the union would not submit their grievances to arbitration, which occurred no later than May 16, 2000.[7] Because the complaint in this case was filed on September 18, 2001, the court held that the plaintiffs' hybrid § 301/fair representation claims were barred by the six-month statute of limitations, and we agree.

---

[7] Of course, Moss never filed a grievance with the union, and therefore he was barred from asserting a claim under § 301. *DelCostello*, 462 U.S. at 163, 103 S. Ct. at 2290.

## IV. CONCLUSION

Because Johnson failed to file a brief on appeal, we DISMISS his appeal for failure to prosecute. As to the appeals brought by Bartholomew, Childers, Moss, and Higgins, we AFFIRM IN PART, VACATE IN PART, and REMAND. We AFFIRM the district court's grant of summary judgment in favor of AGL Resources, Inc. and Atlanta Gas as to the plaintiffs' state-law breach of contract claims and their intentional infliction of emotional distress claims. Likewise, we AFFIRM the district court's grant of summary judgment in favor of the defendants' as to the plaintiffs' claims under § 301 of LMRA. But we hold that the plaintiffs' state-law claims for tortious interference with business relations and defamation are not preempted by the LMRA to the extent that these claims are based upon the defendants' conduct following the plaintiffs' termination and unrelated to the grievance process. Accordingly, we find that the district court erred when it granted summary judgment in favor of AGL Resources, Inc. and Atlanta Gas as to Bartholomew's, Childers's, Moss's, and Higgins's state-law claims for tortious interference with business relations and defamation, and we VACATE the district court's judgment as to these claims and REMAND for further proceedings.

APPEAL OF CHARLIE JOHNSON DISMISSED FOR FAILURE TO PROSECUTE; REMAINING APPEALS AFFIRMED IN PART, VACATED IN PART, AND REMANDED.